# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **KENNETH L. BOYER,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Case No. 1:18-CV-00143-NCC** |
|  | ) | |
| **ANDREW M. SAUL,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Kenneth L. Boyer ("Plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in

support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on June 12, 2015 (Tr. 131-32). Plaintiff was

initially denied on August 27, 2015, and he filed a Request for Hearing before an Administrative

Law Judge ("ALJ") on September 1, 2015 (Tr. 59-67). After a hearing, by decision dated

September 7, 2017, the ALJ found Plaintiff not disabled (Tr. 10-24). On May 20, 2018, the

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and that Plaintiff has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date (Tr. 15).  The ALJ found Plaintiff has the severe impairments of degenerative disc disease and mild degenerative joint disease of the hips, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work (Tr. 16).  The ALJ found Plaintiff capable of performing past relevant work as a packager, an industrial cleaner, and a meat processing laborer (Tr. 18).  In doing so, the ALJ noted that Plaintiff was 59 years old on the alleged onset date (Tr. 19).  Alternatively, the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the Plaintiff also can perform (*Id.*).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 20).  Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to fully and fairly develop the record (Doc. 19 at 3-6). Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's RFC (*Id.* at 7-11) Because the Court finds that the ALJ failed to support his RFC determination with some medical evidence, the Court will remand this action.

Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own

description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found Plaintiff has the RFC to perform the full range of medium work (Tr. 20). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Social Security Ruling 83-10 further clarifies:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of

frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, *e.g.*, taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Full range of work

is defined as an ability to do "[a]ll or substantially all occupations existing at an exertional

level." *Id.*

The Court finds the ALJ's RFC determination that Plaintiff can do the full range of

medium work not to be supported by some medical evidence. Upon a complete and thorough

review of the record, it is clear that Plaintiff is an individual with chronic back pain that has

worsened over time. Imaging from September of 2010 shows multilevel degenerative changes of

the lumbar spine and mild degenerative changes (Tr. 249-50). Similarly, x-rays of the hips and

spine from July 2014 show minor degenerative changes in both hips and mild degenerative

changes in the spine (Tr. 251-52). During this same period, Plaintiff consistently reported back

pain of at least a 7 on a one to ten scale (Tr. 245). Notes also indicate that Plaintiff was positive

for back pain, was tender to palpation, had mild reduced range of motion, and had a diffusely

painful lumbar area with forward flexion straight leg raising (Tr. 245, 259, 276, 282, 299).

However, by 2015, x-rays and a CT scan in December of that year indicate that Plaintiff's

condition had "obviously progressed" as the radiologist found multilevel endplate erosive changes with areas of sclerosis and lucencies involving the endplates as well as endplate irregularities and mild to moderate multilevel broad-based disc bulges at L3-4 through L5-S1 (Tr. 377, 379). While these scans were taken after a fall, subsequent imaging supports this progression. Specifically, a CT of Plaintiff's cervical spine in July 2016 indicates that Plaintiff has degenerative changes including moderate to severe right foraminal narrowing and moderate left foraminal narrowing at C5-C6 (Tr. 430). By 2017, Plaintiff was on an extensive regiment of pain medication; Plaintiff was taking carisoprodol, hydrocodone, ibuprofen, and tramadol for his back pain (*See* Tr. 404).

Plaintiff's work history further supports the narrative that Plaintiff's chronic back pain worsened over time. Plaintiff's work history indicates consistent earnings through 2014 with earnings dropping off suddenly in 2015 (Tr. 174). Therefore, although Plaintiff continued to work with some back pain, Plaintiff stopped working in September 2014 because of his condition (Tr. 189). *Tyson Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) (finding a consistent work record to support the credibility of plaintiff's disability complaint).

The ALJ notes that the objective medical evidence was limited; his review of the medical records consists of approximately a page (Tr. 17-18). Indeed, after Plaintiff stopped work, he appears not to have sought out medical treatment as frequently but, instead, had his prescriptions refilled primarily through emergency room visits. In fact, records indicate his inability to afford treatment including pain management (Tr. 308). To the extent Plaintiff continued to see his primary care physician, Dr. Edith Hickey ("Dr. Hickey"), Plaintiff should not be penalized for Dr. Hickey's sparse note-taking style (*See, e.g.* Tr. 309, 404).

In light of Plaintiff's limited treatment record, the Administration sent Plaintiff for a Consultative Exam with Dr. Chul Kim, M.D. ("Dr. Kim") on August 19, 2015 (Tr. 352-57). However, the ALJ dismissed Dr. Kim's findings and selected the final sentence of Dr. Kim's exam results and one of the only positive finding to highlight; "[t]he neurological examination was non-specific including sensory, motor, reflex and muscle mass" (Tr. 18, 355). Contrary to the ALJ's apparently limited review of the consultative examiner's report, Dr. Kim diagnosed Plaintiff with, among other things: (1) chronic lower back pain with degenerative joint disease in the lumbar spine; (2) chronic pain in bilateral hips and knees with osteoarthritis; (3) pain, numbness and trigger finger in right hand 2nd and 3rd digits, probable nerve damage and/or degenerative joint disease; and (4) chronic obstructive lung disease (Tr. 355). In doing so, Dr. Kim conducted a range of motion exam and found, in relevant part:

> Flexion of bilateral shoulders to 125 degree[s] gave him lower back pain and abduction of bilateral shoulders to 135 degree[s] gave him pain in the left side of the lower back. Both legs were very stiff at the hips, knees and ankles. Flexion of the lumber spine to 70 degree[s] gave him lower back pain and left lateral flexion of lumbar spine to 25 degree[s] gave him pain in the left side of the body. The lower back over lumber spine was tender without paralumbar vertebral muscle spasm. The straight leg raising was up to 70 degree[s] bilaterally with pain in the lower back and hip. . . . His gait was stable but while standing straight his right shoulder looked somewhat higher positioned than left shoulder. He was able to bear full weight on right leg and left leg for a few seconds, walking on heels and toes was not good, squatting was up to half way with pain in the lower back and getting on a[nd] off examining table was without significant problem.

This is a clear instance of the ALJ "cherry-picking" one of the few positive statements made in the report. *See Simmons v. Soc. Sec. Admin.*, No. 3:17-CV-00287 JTK, 2018 WL 4931994, at *3 (E.D. Ark. Oct. 11, 2018). *See also Bormes v. Berryhill*, No. 4:16-CV-04155-VLD, 2017 WL 4712215, at *16 (D.S.D. Oct. 18, 2017) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164, 1166 (9th Cir. 2014) for the proposition holding it was error to cherry-pick characterizations from medical records to support discrediting claimant's testimony while ignoring other pertinent

medical evidence).  The medical evidence available, especially the records from 2015 forward, does not support that Plaintiff could do the frequent bending-stooping or had the flexibility of the knees and torso to do the full range of medium work.  Further, while "there is no requirement that an RFC finding be supported by a specific medical opinion," this appears to be a case where a medical opinion would have been particularly helpful as the amount Plaintiff could lift during the disability period is particularly unclear (Tr. 18).  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Finally, the ALJ failed to fully consider Plaintiff's COPD.  The ALJ found Plaintiff's COPD not to be a severe impairment (Tr. 15-16).  In doing so, the ALJ noted that Plaintiff was diagnosed with COPD but that "evidence does not demonstrate any significant functional limitations" (Tr. 16).  By way of example, the ALJ stated "[f]or instance, chest x-rays showed only mild hyperexpansion, with no definitive infiltrates, pneumothorax, or effusions, while physical examinations consistently show normal respiratory effort and lung sounds, without signs of wheezing, rales, or rhonchi" (Tr. 16, 456-57 (x-rays showing mildly hyperexpanded lungs)).  However, while the record is replete with instances of normal respiratory findings, COPD is a chronic progressive condition and the record indicates that Plaintiff experienced wheezing (Tr. 350 ("decreased BS bilateral, wheezing"); 405 ("He has wheezes")).  Plaintiff was also taking Advair, an inhaler, for his COPD (Tr. 267, 297, 404).  Indeed, Plaintiff listed it as an impairment on his application for benefits (Tr. 46-47).  *See cf. Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed).  Regardless, there is no indication that the ALJ considered this impairment when determining Plaintiff's RFC.  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  *See also Brockman v. Berryhill*, No. 2:16-CV-00032

JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically

determinable impairments of which we are aware, including your medically determinable

impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when

we assess your residual functional capacity.").  To clarify, the Court is not making a final

determination whether Plaintiff's COPD is a severe impairment under the relevant regulations

but rather that ALJ failed to appropriately and fully consider Plaintiff's COPD.

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on

substantial evidence in the record as a whole and should be reversed and remanded.  On remand,

the ALJ is directed to reconsider Plaintiff's severe impairments at step two; conduct a second

physical consultative examination; seek a medical opinion from Plaintiff's current primary care

physician; further develop the medical record if necessary; and then proceed through the

sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in

accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 14th day of August, 2019.

   /s/ Noelle C. Collins        
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE